Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| SANTUARIO HACIA EL PADRE, INC.<br><br>Demandante - Apelada<br><br>v.<br><br>MARÍA LUISA ZAYAS GARCÍA, LA SUCESIÓN DE JOSÉ HÉCTOR MONROIG VÉLEZ COMPUESTA POR JOSÉ HÉCTOR MONROIG ZAYAS, JOSÉ RAMÓN MONROIG ZAYAS Y MARÍA MONROIG ZAYAS<br><br>Demandados – Apelantes | TA2025AP00169 | Apelación procedente del Tribunal de Primera Instancia, Sala de Carolina<br><br>Caso núm.: CA2023CV00895 (701)<br><br>Sobre: Incumplimiento de Contrato |

Panel integrado por su presidente, el Juez Sánchez Ramos, la Jueza Romero García y el Juez Pérez Ocasio.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de septiembre de 2025.

Por la vía sumaria, el Tribunal de Primera Instancia (el "TPI") declaró con lugar una demanda dirigida a obtener la devolución de un depósito realizado a raíz de un contrato de opción a compra de un inmueble. Según se explica en detalle a continuación, concluimos que actuó correctamente el TPI, pues la parte demandada no controvirtió los hechos sustentados por la parte demandante, a los efectos de que, por el incumplimiento de la parte demandada con sus obligaciones, el contrato de compraventa no pudo otorgarse.

I.

El 23 de marzo de 2023, Santuario Hacia el Padre, Inc. (la "Corporación" o la "Compradora"), presentó la acción de referencia, sobre incumplimiento de contrato (la "Demanda"), en contra de la Sra. María Luisa Zayas García y los miembros de la Sucesión del

Ing. José Héctor Monroig Vélez, compuesta por el Sr. José Héctor Monroig Zayas, el Sr. José Ramón Monroig Zayas y la Sa. María Monroig Zayas (los "Apelantes", "Demandados" o "Vendedores").

La Corporación alegó que, el 10 de mayo de 2014, suscribió un contrato de opción a compra (el "Contrato") con el Ing. José Héctor Monroig Vélez (el "Causante") y su esposa la Sra. María Luisa Zayas García (el "Matrimonio"). De conformidad con el Contrato, el Matrimonio le vendería a la Corporación una porción de un terreno ubicado en el barrio Barrazas del Municipio de Carolina (la "Propiedad"), por el precio total de $75,000.00.

La Compradora entregó $50,000.00, como depósito, mientras que los restantes $25,000.00 serían entregados al momento de suscribirse el contrato de compraventa. La transacción de compraventa **debía llevarse a cabo en o antes de un año a partir de la fecha del contrato de opción**. **No obstante, podía prorrogarse sin penalidad hasta culminarse la compraventa**.

La Corporación explicó que, el 19 de mayo de ese mismo año, las partes suscribieron un *Addendum*, en el que acordaron la entrega al Matrimonio de **los restantes $25,000.00** del precio de la compraventa. Destacamos que, en dicho addendum, los Apelantes comparecieron como testigos. Además, las partes acordaron que ni el Matrimonio, ni sus causahabientes, podrían gravar la Propiedad y estaban obligados a cumplir el contrato.

Una vez comenzadas las gestiones para tramitar la segregación del terreno y los permisos, falleció el Causante. La Corporación indicó que, a pesar de múltiples requerimientos a los Demandados para que realizaran las diligencias hereditarias de rigor y suplieran otra información requerida por el Municipio, los Demandados se habían negado. La Corporación afirmó que, desde el 15 de agosto de 2018, los procedimientos ante la oficina de

permisos del Municipio estaban paralizados por la falta de cooperación de los Apelantes.

Luego de que a los Apelantes se les anotara la rebeldía, por no contestar oportunamente la Demanda, en noviembre de 2024, estos informaron al TPI que, de acuerdo con el Contrato, los trámites de permisología le correspondían a la Corporación. Alegaron que el Municipio había determinado que dicho proceso implicaba una variación, por lo cual resultaba más oneroso y costoso. Sugirieron que la Corporación sufragara el costo de dicho proceso, mientras que los Apelantes proveerían la documentación que se les requiriera.

En enero de 2025, la Corporación incoó una *Moción en Cumplimiento de Orden y Solicitud de Sentencia Sumaria*. Alegó que la solicitud de segregación del terreno había sido presentada en tres (3) ocasiones y que, al presentar una nueva solicitud, el Municipio le informó que dicha solicitud presentaba errores en la información suministrada. La Corporación planteó que los Apelantes no le informaron que la finca, de la cual habría de segregarse la Propiedad, tiene una clasificación de suelo rústico común y está calificada como bosque de interiores (B-1). Además, plantearon que el Contrato llevaba más de diez (10) años sin cumplirse.

Añadieron que la tardanza de los Apelantes en gestionar los trámites relacionados con el caudal relicto del Causante, fallecido en enero de 2019, ocasionó la paralización de la solicitud de segregación y ocasionó el incumplimiento de las exigencias del Municipio. En vista de lo anterior, solicitaron que se mantuviera la anotación de rebeldía y, por la vía sumaria, se ordenara a los Apelantes devolver la suma de $75,000.00, más intereses, costas, gastos y honorarios de abogado ascendentes a $7,500.00.

Mediante una Sentencia notificada el 24 de enero, el TPI declaró *Ha Lugar* la Moción; concluyó que los Apelantes

incumplieron el Contrato y ordenó la devolución de los $75,000.00, con intereses al 8.75%, desde su otorgamiento el 10 de mayo de 2014 hasta la totalidad de su pago, más costas y gastos ascendentes a $865.00.

El 10 de febrero (lunes), los Apelantes instaron una *Urgente Solicitud para que se Deje sin Efecto Anotación de Rebeldía y Sentencia Sumaria Emitida en Rebeldía.* Solicitaron que se dejara sin efecto la anotación de rebeldía y la Sentencia, y que se les permitiese contestar la Demanda. Además, los Apelantes presentaron una *Contestación a Demanda.*

El 18 de febrero, el TPI notificó una *Orden* mediante la cual dejó sin efecto la anotación de rebeldía a los Apelantes, así como la sentencia notificada en enero.

El 13 de marzo, la Corporación instó otra *Moción en Solicitud de Sentencia Sumaria* (la "Moción"). Reiteró que no había controversia de hechos que le impidiese al TPI ordenar a los Apelantes la devolución del precio de compraventa, más el pago de gastos, costas y honorarios de abogado.

Mediante una *Orden* notificada el 13 de marzo, el TPI le concedió a los Apelantes un término a vencer el 2 de abril para que se expresaran en torno a la Moción. **Los Apelantes no se opusieron a la Moción.**

Mediante una Sentencia notificada el 24 de junio (la "Sentencia"), el TPI declaró con lugar la Demanda. El TPI concluyó que los Apelantes incumplieron el Contrato y ordenó la devolución del precio pactado ($75,000.00), más el pago de costas y gastos incurridos por la Corporación.

En desacuerdo, el 24 de julio, los Apelantes presentaron el recurso de apelación de referencia. Formularon los siguientes dos (2) señalamientos de error:

PRIMER ERROR: Erró el TPI al concluir que los demandados incurrieron en negligencia crasa y violaron el contrato de opción.

SEGUNDO ERROR: El TPI abusó de su discreción y se excedió en su facultad revisora al ignorar hechos materiales que estaban en controversia, privando ala parte demandada de "su día en corte".

La Corporación presentó su alegato en oposición; resolvemos.

II.

La sentencia sumaria es un mecanismo procesal que se utiliza para lograr la solución justa, rápida y económica de una controversia donde resulta innecesario celebrar un juicio en su fondo. *Meléndez González v. M. Cuebas, Inc.*, 193 DPR 100, 109 (2015); *SLG Zapata v. J.F Montalvo*, 189 DPR 414, 430 (2013). Este mecanismo procede cuando no existe una controversia real sobre hechos materiales. Un hecho es material cuando puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, llama a estos hechos *esenciales y pertinentes*.

La Regla 36, *supra*, impone un número de requisitos tanto al proponente de la sentencia sumaria como al que se opone a la misma. La moción de sentencia sumaria debe contener: una exposición breve de las alegaciones de las partes, los asuntos litigiosos en controversia, la causa de acción sobre la cual se solicita la sentencia sumaria, una relación concisa y organizada en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia, con indicación de los párrafos o páginas de la prueba documental donde se establecen los mismos, la argumentación del derecho aplicable y el remedio que se solicita. 32 LPRA Ap. V, R. 36.3(a).

De igual forma, el que se opone a la sentencia sumaria tiene que cumplir con las exigencias de la Regla 36. En particular, debe

enumerar aquellos hechos materiales de buena fe controvertidos y aquellos sobre los cuales no hay controversia. En ambos casos, por cada hecho, se tiene que indicar los párrafos o páginas de la prueba documental que establecen o impugnan ese hecho. 32 LPRA Ap. V, R. 36.3(b).

La parte que se opone a que se dicte sentencia sumariamente "no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica, como lo haya hecho la parte promovente". 32 LPRA Ap. V, R. 36.3(c). Los hechos enumerados en la moción de sentencia sumaria que no sean debidamente controvertidos **podrán considerarse admitidos**. 32 LPRA Ap. V, R. 36.3(d). De forma similar, "[e]l tribunal no tendrá la obligación de considerar aquellos hechos que no han sido específicamente enumerados". *Íd.*

El tribunal podrá dictar sentencia sumariamente cuando, de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas y otra evidencia, no surja controversia real sustancial sobre algún hecho material y, además, proceda como cuestión de derecho. 32 LPRA Ap. V, R. 36.3(e).

Por su parte, la Regla 36.4 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4 y su jurisprudencia interpretativa, disponen que los jueces del foro primario están obligados, cuando deniegan, parcial o totalmente una moción de sentencia sumaria, a hacer una determinación de los hechos que han quedado incontrovertidos y aquellos que aún están en controversia. El carácter mandatorio de la determinación de los hechos materiales sobre los cuales no existe controversia sustancial y sobre los cuales sí, tiene el propósito de propiciar una revisión adecuada por los foros apelativos. *Meléndez González et al. v. M. Cuebas*, 193 DPR a la pág. 113, citando a J.A.

Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da. ed., San Juan, Pubs. JTS, 2011, T. III, págs. 1074-1075.

En aquellos pleitos que hayan sido resueltos por la vía sumaria, solamente se exige que el TPI aplique el derecho a los hechos sobre lo que no existe controversia. A esos efectos, la Regla 42.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2, dispone que:

> [...]

> **No será necesario especificar los hechos probados y consignar separadamente las conclusiones de derecho**:

> a) **al resolver mociones bajo las Reglas 10 o 36.1 y 36.2, o al resolver cualquier moción, excepto lo dispuesto en la Regla 39.2**;

> b) en casos de rebeldía;

> c) cuando las partes así lo estipulen, o

> d) cuando por la naturaleza de la causa de acción o el remedio concedido en la sentencia, el tribunal así los estime.

> En los casos en que se deniegue total o parcialmente una moción de sentencia sumaria, el tribunal determinará los hechos de conformidad con la Regla 36.4. (Énfasis suplido).

### III.

Por otro lado, antes de la promulgación del Código Civil de 2020, el contrato o pacto de opción no estaba reglamentado.[1] Véase Michel J. Godreau, *La opción de compra en Puerto Rico*, 53 Rev. Jur- UPR 565 (1984). Más bien, fue definido jurisprudencialmente de la siguiente manera: "[...] un contrato consensual, mediante el cual una parte (promitente) le concede a otra parte (optante) el derecho exclusivo a decidir de manera unilateral si comprará determinado bien inmueble que le pertenece al promitente. Esta facultad tendrá que ejercitarse dentro de un período de tiempo

---

[1] Hacemos referencia al estado de derecho antes de la promulgación del vigente Código Civil debido a que el Código Civil de 1930 era la ley vigente al momento de otorgarse el contrato de opción.

definido por las partes, y tanto el promitente como el optante se beneficiarán con el negocio." *S.L.G. Irizarry v. S.L.G. García*, 155 DPR 713, 722 (2001). Los requisitos esenciales del contrato de opción son: la concesión por una parte a la otra de la facultad de decidir sobre la celebración del contrato por el cual se opta, de modo exclusivo, por plazo cierto y sin otra condición que el propio juicio del optante. *Mayagüez Hilton Corp. v. Betancourt*, 156 DPR 234, 246 (2002), citando a J. Castán Tobeñas, *Derecho Civil Español, Común y Foral*, Madrid, Ed. Reus, 14ta ed., 1988, T. IV, pág. 50.

El contrato de opción otorga al optante la facultad de determinar, dentro del plazo concedido, si perfecciona el contrato definitivo, es decir, el contrato por el cual optó. *Matos, González v. SLG Rivera-Freytes*, 181 DPR 835, 841 (2011). Por ello, "no se opta por optar, sino que la opción es la posibilidad de perfeccionar un contrato previamente delimitado". Íd., citando a J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1982, Tomo II, Vol. 2, pág. 50. Asimismo, el optatario o promitente viene obligado a no frustrar la facultad que le asiste al optante mientras el plazo para ejercer el derecho de opción está vigente. *Mayagüez Hilton Corp. v. Betancourt*, supra, pág. 250; Castán Tobeñas, *op. cit.*, págs. 54-55.

Por otro lado, "el alcance de la opción aludida no se puede fijar sin tomar en cuenta el contenido específico que en [el] contrato se le imparte". *Matos, González* 181 DPR a la pág. 843 citando a *Zeta Enterprises, Inc. v. E.L.A.*, 145 DPR 1, 10 (1998). Así pues, reconoció la posibilidad de que las partes convengan que el derecho de opción esté supeditado al cumplimiento de ciertas condiciones. Íd. Véase, además, *Mayagüez Hilton Corp*, supra. En estos casos, a pesar de que "[u]na opción típica implica que el poseedor del derecho tiene la iniciativa de decidir" si se celebrará el contrato definitivo, en realidad el optante "no dispone de un ámbito ilimitado de voluntariedad".

*Zeta Enterprises, Inc.*, 145 DPR a la pág. 10. Vemos, pues, que se trata de "disposiciones [que] cualifican el ámbito de la opción, conforme a la voluntad de las partes contratantes". Íd.

IV.

Concluimos que actuó correctamente el TPI al resolver sumariamente que los Apelantes incumplieron el Contrato. Surge del récord que los Apelantes no replicaron o se opusieron a la Moción. Por tanto, el TPI válidamente podía considerar como incontrovertidos los hechos incluidos en la Moción y debidamente sustentados por la Corporación. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro*, Op. de 7 de enero de 2025, 2025 TSPR a las págs. 8-9, 215 DPR ___ (2025), citando a *Mun. de Añasco v. ASES et al.*, 188 DPR 307, 328 (2013); *Abrams Rivera v. E.L.A.*, 178 DPR 914, 933 (2010). De dicha relación de hechos, surge que los Apelantes no cumplieron con su deber de suplir información en su poder, necesaria para el trámite de segregación. De hecho, ni aun a través del recurso de referencia, los Demandados han suplido prueba alguna para controvertir los hechos sustentados por la Corporación en la Moción. En vez, el recurso descansa en meras alegaciones.

Resaltamos que, aunque del Contrato surge que la Corporación debía realizar las gestiones de permisología, también se acordó que los Vendedores estaban obligados a ofrecer toda la información necesaria para finiquitar dichos trámites. Sin embargo, de la prueba documental que la Corporación anejó a la Moción, la cual los Apelantes no intentaron controvertir, surge que hubo múltiples instancias, a través de varios años, en las que la Corporación le requirió ayuda a los Apelantes, como causahabientes del Causante, a los fines de que se completara el proceso hereditario y se proveyera información requerida por el Municipio para otorgar los permisos solicitados. Sin embargo, según debidamente

acreditado por la Corporación, los Apelantes no cumplieron con su deber al respecto. Así pues, se desprende del récord, de forma incontrovertida, el incumplimiento patente y reiterado de los Apelantes con sus obligaciones contractuales.

V.

Por los fundamentos antes expuestos se confirma la sentencia apelada.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones